The Honorable Thomas D. Wynne Prosecuting Attorney Thirteenth Judicial District Fordyce, Arkansas 71742
Dear Mr. Wynne:
This is in response to your request for an opinion on several questions relating to "going out of business sales" under A.C.A.4-74-101 et seq. Specifically, you indicate that a particular jewelry store operating as a domestic corporation in Camden, Arkansas has obtained a license to conduct a "going out of business sale" for sixty days, as provided in the statute, and has also obtained the allowable thirty day extension. You note that both of these time periods have passed, but that the owner, (president and sole shareholder of the corporation) wishes to continue the sale through the Christmas season in an effort to complete the liquidation of his inventory. Based upon these facts, you ask the six questions below, which will be restated and answered in the order posed.
 Question 1. Since the business is owned and operated by a corporation, with James Patton being the president and sole shareholder thereof, is the penalty provided for under Section 4-74-102 applicable to only the corporation, or can James Patton, individually, be cited, tried and if found guilty, punished for the misdemeanor offense?
Section 4-74-102 provides as follows:
 Any person conducting a going out of business sale contrary to the provisions of this chapter who shall fail or refuse to comply with the requirements of this chapter or who shall violate any provision hereof shall be guilty of a Class A misdemeanor.
"Person" is defined at A.C.A. 4-74-101 (2) as meaning "any individual, corporation, partnership, association, or other entity". The law thus provides that any "person" conducting a sale contrary to the provisions of4-74-101 et seq. shall be guilty of a Class A misdemeanor. "Person" is defined, however, as including individuals and corporations. It is my opinion that this terminology would allow the corporation to be charged with the offense. It has been stated that:
 According to the weight of authority corporations are to be regarded as persons within the meaning of statutes which make certain acts by "persons" an offense, if they are within the spirit and purpose of the statute, and especially where the particular statute or another applicable statute so provides. [Footnotes omitted.]
19 C.J.S. Corporations 1360 at p. 1074.
With the knowledge that the corporation can be charged, the question is now whether the individual can also be charged, or whether he is insulated from criminal liability by the fact of incorporation. The Arkansas Criminal Code, at A.C.A. 5-2-503 provides that:
 (a) A person is criminally liable for any conduct constituting an offense that he performs or causes to be performed in the name of or in behalf of an organization to the same extent as if that conduct were performed in his own name or behalf.
Although the penalty provided in A.C.A. 4-74-102 is not a part of the criminal code, A.C.A. 5-1-103(b) provides that the criminal code provision shall govern "the prosecution for any offense defined by a statute not part of this code and committed after January 1, 1976." It is thus my opinion that either the individual or the corporation could be charged with a violation of A.C.A.4-74-102.
With this knowledge in mind, the question of who is properly charged under the statute may turn upon which entity is "conducting" the sale as stated in 4-74-102. It may reasonably be concluded that either or both entities are conducting the sale because the individual is the principal officer and sole shareholder of the corporation. Accordingly, it is my opinion that the decision of which entity, (the individual or the corporation) to charge falls generally within the exercise of the prosecutor's discretion. It should be noted, however, that if the corporation is charged, it will be subject only to a fine. It has been stated that:
 Although there are early authorities to the effect that a corporation cannot commit a crime, the generally accepted modern rule is that, except for such crimes as a corporation is held incapable of committing by reason of the fact that they involve personal malicious intent . . . a corporation may be subject to indictment or other criminal process, although the criminal act is committed through its agents. . . . Since . . . a corporation may be punished by fine but not by imprisonment, where the penalty prescribed for the violation of a criminal statute calls for imprisonment or death only, a corporation cannot be prosecuted therefor, but, where the penalty of a fine is prescribed, the corporation may be prosecuted, whether or not an alternative penalty of imprisonment is prescribed. [Footnotes omitted.]
19 C.J.S. Corporations, 1358 at p. 1073.
Your second question is as follows:
 Question 2. If the business remains open following November 4, [the date of expiration of the license] is there only one violation, regardless of the number of days it remains open thereafter?
The answer to this question is also governed by A.C.A.4-74-102. That section provides that any person conducting a "going out of business sale" contrary to the provisions of the chapter or failing or refusing to comply with the chapter shall be guilty of a Class A misdemeanor. There is no authority, in my opinion, for the imposition of additional criminal penalties conditioned on the number of days the business remains open. It should be noted, however, that the sheriff and other law enforcement officials of the county and the prosecuting attorney are charged with the duty to enforce the chapter. A.C.A. 4-74-104. Section 4-74-110
provides that no person conducting a sale under the chapter shall continue to operate a similar business at the same location after conclusion of the sale. It may reasonably be inferred from these provisions that the local law enforcement personnel have authority to ensure that after the conclusion of a sale, (i.e. after the license to conduct a legal sale expires) the owner does not continue to operate a similar business on the premises. In other words, the owner of the store may not simply be charged with the misdemeanor offense and then continue the "going out of business sale" with impunity.
Your third question is as follows:
 Under Section 4-74-110, what does `continue' constitute? Specifically, if the business were closed for one or more days immediately following November 4, has the corporation or Mr. Patton avoided the `continuation' requirement of that section?
It is my opinion that the answer to this question is "no". Although the term "continue" may lend itself to more than one interpretation, it is my opinion that to cease business for "one or more" days and then to resume, would be contrary to the spirit of the statute, and would constitute an unlawful circumvention of the chapter's provisions.
Your fourth question is as follows:
 If the corporation sells the inventory to a third party that desires to continue the business operation from the same premises, is there a violation of Section 4-74-110 in that the purchaser of the business is not the person conducting the Going Out of Business sale?
Some clarifying remarks are necessary prior to the answering of this question. If the inventory is sold to a true third party, that party will need its own license to conduct a "going out of business sale". See A.C.A.4-74-105. It may not continue to conduct the sale under the former owner's license. The license is not transferable and it has expired. If the owner transfers the stock of his corporation to a new owner, (along with the inventory), the license will remain in the name of the corporation, and it has expired. It is my opinion that a true third party purchaser who buys the inventory and wishes to obtain a license to conduct a going out of business sale may do so, if he or she complies with all of the licensure requirements. It is also my opinion, however, that the present owner may not transfer the business to a new corporation, or a series of new corporations in which he has an interest, to obtain a new license or continual new licenses and in effect conduct the sale as long as he desires, because this would thwart the purposes of the statute.
Thus, in response to your question, it is my opinion that if the inventory is sold to a true third party purchaser who obtains its own license to conduct a "going out of business" sale, there will not be a violation of A.C.A. 4-74-110, so long as the provisions of the chapter are complied with in the obtaining of the new license. Otherwise, (if the corporate stock is transferred, or the owner sells the inventory to a "sham" third party purchaser in an effort to circumvent the provisions of the statute), it is my opinion that there would be a violation of the statute.
Your fifth question is as follows:
 Is the referenced statute unconstitutional, thereby unenforceable for any reason? In particular, is it an infringement of the constitutional right of free speech?
In response to your question, please note that I have enclosed a copy of Opinion No. 88-303 which concludes that the statutory scheme in question is constitutional. That opinion does not address whether the statutes in question violate First Amendment free speech rights. Any "free speech" rights involved in this situation, however, will be commercial free speech rights. Commercial speech is not protected to the same extent as noncommercial speech under the United States Constitution. Bolger v. Young Drug Products Corp.,103 S. Ct. 2875 (1983); Central Hudson Gas Electric Corp. v. New York, 447 U.S. 557 (1980); Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447 (1978); and Virginia State Board of Pharmacy v. Virginia Consumer Council, 425 U.S. 748
(1976). Regulation of commercial speech is justified where it serves an important state interest, without unduly interfering with freedom of speech and press. Virginia State Pharmacy Board, supra. It is my opinion that the regulations found in A.C.A. 4-74-101 et seq. serve an important state interest in that they protect the public from deceptive business practices, and that the regulations do not unduly burden free speech rights.
Your sixth question is as follows:
Question 6. Is the statute void for vagueness?
It is my opinion that the answer to this question is "no". It has been held that for a statute to avoid being vague under due process standards, it must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden and it must not be so vague and standardless that it leaves judges free to decide, without any legally fixed standards, what is prohibited and what is not on a case-by-case basis. Thompson v. Arkansas Social Services, 282 Ark. 369,669 S.W.2d 878 (1984), app. dismissed 469 U.S. 926 (1984). It is my opinion that A.C.A. 4-74-101 et seq. does not violate this standard. Although it is difficult to undertake a "void for vagueness" analysis in the abstract (as you have not indicated which provision, if any, may be impermissibly vague), it is my opinion that a person of ordinary intelligence is given fair notice under the statutes as to what conduct is prohibited.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
STEVE CLARK Attorney General
SC:arb